# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| TARVISIUM HOLDINGS, LLC, et al., </br></br> Plaintiffs, </br></br> vs. </br></br> DUKAT, LLC, et al., </br></br> Defendants. | ) </br> ) </br> ) </br> ) </br> ) </br> ) Case No. 4:19-cv-00086-FJG </br> ) </br> ) </br> ) </br> ) |

**PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND/OR FOR A MORE DEFINITE STATEMENT**

Plaintiffs Tarvisium Holdings, LLC and 45N12E, LLC (collectively, "Tarvisium" or "Plaintiffs"), by and through their undersigned counsel, hereby oppose Defendants' Joint Motion to Dismiss Plaintiffs' Complaint and/or for a More Definite Statement in its entirety. In support of this opposition, Tarvisium states as follows:

**LEGAL STANDARD**

"'A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint; it typically does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Calon v. Bank of Am.*, 2016 WL 2889077, at *2 (W.D. Mo. May 17, 2016); *see also* 5B Wright and Miller, *Federal Practice and Procedure* § 1356 (3d ed. 2016) ("cases from throughout the federal judicial system" "make clear" that "the purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. "Under Rule 12(b)(6), the court assumes that the factual allegations in the complaint are true and construes them in the light most favorable to the plaintiff." *Quintero Community Assoc. Inc v. Hillcrest Bank*, 2014 WL 1687165, at *3 *(citing Data Mfg. Inc. v. UPS, Inc.*, 557 F.3d 849, 851 (8th Cir.2009)).

## ARGUMENT

**I. Defendants' Argument that Tarvisium's Declaratory Judgment Claim (Count I) and Contract Claim (Count II) Fails to State a Claim is Without Merit**

Defendants make two primary arguments why Tarvisium's Complaint supposedly fails to state a claim upon which relief can be granted as to Count I and II. Both are without merit.

*Defendants' Apparent Assertion that the Court Should Consider Matters Outside of the Pleadings*

Defendants first claim that Tarvisium omitted various alleged facts from its Complaint and that the Court should consider the alleged facts proffered by Defendants in their motion to be true. *See e.g.*, Defendants' Joint Motion to Dismiss Plaintiffs' Complaint and/or for a More Definite Statement [Doc #7], ¶ (Plaintiffs admitted they did not make a 1/1/19 Note payment and omitted from complaint other non-payments), ¶ 3 (Plaintiffs omitted from their complaint their retention of an outside consultant to review Dukat's financials), ¶ 4 (Plaintiffs omitted from their complaint that they supposedly delayed in entering into agreements with suppliers and vendors, etc.). Defendants then claim that the omitted alleged facts serve as the legal basis to dismiss

2

Counts I and II. This argument runs directly afoul of well-established standards for motions brought under Rule 12(b)(6), Fed.R.Civ.P., and is otherwise without merit.

Other than citing one case that simply sets forth the elements of a breach of contract claim, Defendants do not cite any case in support of their argument, much less one that stands for the proposition that the Court should consider Defendants' proffered allegations from outside of the record. Nor could they as it is well-settled that the Court is to evaluate a 12(b)(6) motion based upon the allegations of the plaintiff's complaint, materials embraced by the complaint, exhibits attached to the complaint,[1] and matters of public record with all reasonable inferences given in the plaintiff's favor. *See Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir.2010) (*quoting Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir.1999)). And, even if Defendants' arguments were not impermissibly premised on mere allegations asserted in their motion, they would fail.

For instance, Defendants' argument that Tarvisium failed to make note and other payments to Defendants is irrelevant because Tarvisium's obligation to do so was excused by Defendants' material breach of the integrated contract. "In Missouri, matters incorporated into a contract by reference are as much a part of the contract as if they had been set out in the contract in *haec verba*." *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 435 n.5 (Mo. banc 2003); 11 Williston on Contracts Sec. 33:14 (4th ed.)("An integration need not be reflected in only one document; the parties' complete agreement can consist of or be reflected in multiple documents.").

---

[1] This Court can and should consider the integrated contract on Defendants 12(b)(6) motion. Indeed, it supports Tarvisium's positions stated here. While Tarvisium did not attach the agreements constituting the integrated contract to its Complaint, it refrained from doing so only because of the voluminous nature of those documents. *See* Complaint [Doc #1], ¶ 30 n.1 ("Due to the voluminous nature of the Agreements, they are not attached here but can be provided upon request.")

3

Here, the promissory note and other documents at issue in this case are part of the "Ancillary Documents" that are incorporated by reference into the parties' asset purchase agreement ("APA").[2] And, the integration clause in the APA makes this clear when it expressly states, "This Agreement and the Ancillary Documents constitute *the sole and entire agreement* of the parties to this Agreement with respect to the subject matter contained herein and therein . . . ." *See* Amended & Restated Asset Purchase Agreement dated July 23, 2018, Section 10.06, attached as Exhibit A, to Defendants' Motion to Dismiss (emphasis added). Thus, the APA, the promissory note, and other Ancillary Documents constitute one integrated contract.

Relatedly, Missouri follows the "first to breach rule," that is, one party's material breach of contract excuses the non-breaching party's performance. *Forms Manufacturing, Inc. v. Edwards*, 705 S.W.2d 67, 69 (Mo. App. E.D. 1985). Tarvisium has alleged throughout its Complaint that Defendants were the first to materially breach the integrated contract which gave it the option to excuse its own performance. *See* Complaint [Doc #1], ¶¶ 49 – 75, 86, & 96. If this is accepted as true, as it must be at this stage, any obligation of Tarvisium to make note or other payments under the integrated contract was excused.

Defendants also assert that Tarvisium omitted from its Complaint that Tarvisium had an independent consultant review Dukat's financials during due diligence. Aside from the fact that this argument impermissibly relies on Defendants' mere assertions, it does not aid Defendants. This is because under Missouri law a party may be fraudulently or negligently induced into

---

[2] The APA defines "Ancillary Documents" to mean "The Bill of Sale, the assignment and Assumption Agreement, Intellectual Property Assignment Agreement, Assignment and Assumption of Leases, the Transition Services Agreement, Non-Compete Agreement, License Agreement, Buy-Out Agreement, *Promissory Note*, Security Agreement, and other agreements, instruments and documents required to be delivered at Closing." *See* Amended & Restated Asset Purchase Agreement dated July 23, 2018, Article I, attached as Exhibit A, to Defendants' Motion to Dismiss.

entering into a contract even when they conduct an investigation where "(1) the investigating party makes only a partial investigation and relies on both the results of the inspection and the misrepresentation; (2) the buyer lacks equal standing to find the truth, and the facts are not easily ascertainable but are peculiarly within the knowledge of the seller; or (3) the seller makes a specific and distinct misrepresentation." *Outdoor Center, Inc. v. GreatLodge.com, Inc.*, 688 F.3d 938, 942 (8th Cir. 2012); *see also Tietjens v. Gen. Motors Corp.*, 418 S.W.2d 75, 82 (Mo. 1967)("[I]t is not just that a man who has deceived another should be permitted to say to him, 'You ought not to have believed or trusted me,' or 'You were yourself guilty of negligence.'"). Here, Defendants make no claim that any investigation taken by Tarvisium fell outside of the categories set forth in *Outdoor Center* case, much less present evidence of it.

While Defendants do not explain their position, they also state in cursory fashion, "Further per Paragraph 4(c), Plaintiff Tarvisium filing this action is an independent event of immediate default upon the Promissory Note . . . ." Motion to Dismiss, ¶ 2. But ¶ 4(c) of the Promissory Note is simply a standard *ipso facto* clause relating to bankruptcy and reorganization proceedings and has no application in this case.[3] Defendants assertions that an *ipso facto* clause applies to a suit for breach of the integrated contract is also completely inconsistent with the provisions of Sections 8.01, 8.02, 8.04, 8.09, 9.01, 10.10, and 10.11 of the APA which specifically contemplate legal action in the event of breach or fraudulent or intentional misconduct. *See* Motion to Dismiss, Ex. A. Moreover, because Defendants were the first to materially breach the contract long before this suit was filed, any obligation by Tarvisium to refrain from filing suit to vindicate its rights is excused.

---

[3] Such clauses are generally unenforceable in bankruptcy. *In re Ward*, 392 B.R. 788, 791 (Bankr. W.D. Mo. 2008)("*[I]pso facto* clauses, which automatically terminate a contract in the event of a bankruptcy filing or a change in the debtor's financial condition, are generally not enforceable in bankruptcy.").

5

### *Defendants' Assertion that the Contracts Failed for Consideration*

Next, Defendants claim that Tarvisium's Complaint fails to state claims for declaratory judgment and express breach of contract because the integrated contract at issue in the case failed for want of consideration. *Id.*, ¶ 6 ("Plaintiffs, on the face of the Complaint, allege a *lack of adequate consideration* . . . .")(emphasis added), ¶ 8 ("Counts I and II should be dismissed for failure to state a claim upon which relief may properly be granted at least upon the *failure of consideration* . . . .")(emphasis added). It is unclear whether Defendants' argument is that the integrated contract in this case lacked consideration or whether they are arguing from facts outside of the record that they were not the first to materially breach the contract.[4] If the integrated contract in this case, in fact, lacked consideration at the time that it was entered into as Defendants seem to suggest, then it would be void. *Greene v. Alliance Automotive, Inc.*, 435 S.W.3d 646, 654 (Mo. App. W.D. 2014)("the arbitration agreement between Alliance and Greene lacks mutuality of consideration and is, therefore, invalid, non-binding, and unenforceable."); *Dwyer v. Dwyer*, 895 S.W.2d 183, 187 (Mo. App. E.D. 1995)("The alleged agreement is unenforceable at law due to lack of consideration.").

The effect of the integrated contract being void or unenforceable would be that neither party would have any obligations under it and the parties would be entitled to be restored to the positions they were in before they entered into the integrated contract by returning any partial performance, the exact same remedy in the case of rescission. *Ballenger v. Castle Rock Building Corp.*, 904 S.W.2d 62, 64 (Mo. App. W.D. 1995)("'Rescission of a contract extinguishes it as effectually as if it had never been made, and restores the parties to the positions they occupied before the contract was executed.'")(citation omitted). Under this scenario as suggested by

---

[4] Tarvisium has plainly alleged that there was consideration at the time that the parties entered into the interpreted contracts. *See* Complaint [Doc #1] ¶¶ 30-48, 96.

6

67800417.2

Case 4:19-cv-00086-DGK   Document 9   Filed 03/19/19   Page 6 of 16

Defendants, Tarvisium would be entitled to a return of its $1 million payment to Dukat, a return of the monies it paid to Dukat and 36Lower to run the business, as well as payment for the monies Tarvisium had to infuse into the money-losing business that Defendants were operating for Tarvisium.

If, on the other hand, Defendants are not claiming there was a lack of consideration at the time of contracting, but rather that Tarvisium was the first to materially breach the contract, this is plainly in dispute and again, is based on allegations outside of the record. Tarvisium has alleged that Defendants were the first to materially breach the contracts which gives Tarvisium the option to elect to excuse its own performance. *See* Complaint [Doc #1], ¶¶ 49-75, 86, & 98. Tarvisium's allegations must be accepted as true at this stage of the proceedings and therefore, Defendants' assertions on the ultimate factual issue of which party was the first to materially breach the integrated contract do not serve as a basis for dismissal of Counts I and II.

## II. Defendants' Argument that Tarvisium's Claim for Breach of the Covenant of Good Faith and Fair Dealing (Count III) Fails to State a Claim is Without Merit

Next, Defendants assert that because a claim for breach of the covenant of good faith and fair dealing is in the nature of contract, "[i]f [the] breach of contract claim is separately defective, no cause of action lies for this attempted claim of breach of good faith and fair dealing." Motion to Dismiss, ¶ 11. As previously stated, Tarvisium has plainly stated a claim for express breach of contract. Therefore, Defendants' position that Tarvisium's claim for breach of the covenant of good faith and fair dealing necessarily fails is without merit.

Defendants next assert that Tarvisium's allegations supporting its claim for breach of the covenant of good faith and fair dealing "are merely a restatement of the Plaintiffs' previous Count II allegations for breach of contract against the Defendants." Motion to Dismiss, ¶ 11.

This simply is not true and Defendants have ignored Tarvisium's allegation supporting this claim. As the Missouri Court of Appeals has stated:

> "Missouri law implies a covenant of good faith and fair dealing in every contract." "The implied duty of one party to cooperate with the other party to a contract to enable performance and achievement of the expected benefits is an enforceable contract right." "Breach of the implied duty of good faith and fair dealing is a contract action." "A party breaches the covenant of good faith and fair dealing if it exercises a judgment conferred by the express terms of the agreement in a manner that evades the spirit of the agreement and denies the other party the expected benefit of the agreement." The purpose of the cause of action is to "prevent opportunistic behavior where one party exploits changing economic conditions to the detriment of the other party."

*Rock Port Market, Inc. v. Affiliated Foods Midwest Cooperative, Inc.*, 532 S.W.3d 180, 188 (Mo. App. W.D. 2017)(citations omitted). "'Examples of bad faith resulting in breaches of the covenant include willfully *rendering imperfect performance*, *abusing power in the specification of terms*, or *wrongfully interfering with or failing to cooperate with the other party's performance*.'" *Id*. (*quoting Reliance Bank v. Paramont Props., LLC*, 425 S.W.3d 202, 207 (Mo. App. E.D. 2014))(emphasis added).

Here, Tarvisium has specifically plead the same type of conduct that the *Rock Port Market* and *Reliance Bank* cases held to support a claim for breach of the covenant of good faith and fair dealing. For example, Tarvisium has pled:

> 104. Dukat and 36Lower failed to exercise discretion afforded to it under the APA, SA, TSA, and/or SSA reasonably and in good faith and/or prevented Tarvisium from receiving the expected benefits of the APA, SA, TSA, and SSA, thereby breaching the implied covenant of good faith and fair dealing, in making decisions respecting and in failing to meet the contractual requirements set forth above.

> 52. [Describing that Defendants were charged under the contracts to] "[c]onduct the Business in the ordinary course of business consistent with past practice" [but nevertheless shut down the business and failed to inform Tarvisium that it had done so.]

> 55. Far from taking the steps to ensure the continuity of the business, Dukat actively undermined it not only by shutting down the business in early September but also by engaging in disputes with key vendors and refusing to pay them for expenses incurred by Dukat before closing.

> 65. And, regarding training, while some training on the software was provided during the transition, it was focused entirely on Customer Service, Orders, and Marketplace Management. Tarvisium repeatedly requested more in-depth technical and operational training on the software, but Mr. Schwartz (the only person qualified to provide this training) never complied.)
>
> 72. [Detailing that Defendant Kattan contacted one of the business' most important suppliers and informed it that it] "should not continue doing business with Tarvisium because it was in no position to continue operating the business, without the support of Dukat."

*See also* Complaint, ¶¶ 6, 54. Tarvisium has also detailed the motivations behind Defendants' bad-faith conduct:

> 5. Further, on information and belief, *Defendants never intended to separate themselves from the business permanently.* Before the closing, Dukat, Mr. Kattan, and Mr. Schwartz shut down the operations of the EHW which had the effect of inflicting a fatal wound to the business. After closing, Defendants only minimally complied with its responsibilities to operate the business without any impact to its financial condition. (emphasis added)
>
> 7. On information and belief, Defendants were either indifferent to the continued success of EHW after the closing in direct violation of the contractual agreements or intentionally caused EHW to fail *in order to obtain the assets of the business back* through the security agreement that Tarvisium had executed in Dukat's favor. (emphasis added)

These allegations are more than sufficient to plead a claim for breach of the covenant of good faith and fair dealing under the preceding authorities.

## III. Defendants' Argument that Tarvisium's Claim for Fraudulent Inducement (Count IV) Fails to State a Claim is Without Merit

Next, Defendants argue that (a) Plaintiffs did not plead fraud with particularity, and (b) that "Plaintiff made no allegations why the individual Defendants should be held personally liable for any alleged acts done by any business entities, specifically, such as a theory of piercing the corporate veil where either the entity was not well capitalized or that either individual

9

67800417.2
Case 4:19-cv-00086-DGK   Document 9   Filed 03/19/19   Page 9 of 16

Defendant had such complete control over the entity that he treated it as his alter ego." Motion to Dismiss, ¶ 21.

### *Tarvisium has Pled Fraudulent Inducement with Particularity*

First, Defendants claim that "Plaintiffs make a conclusory statement that the Defendants made representations as to the sales and profitability of Essential Hardware, and that those representations were false without providing any specific factual allegations of what representations was [sic] false, how they were material and how Plaintiffs' reliance upon the representations was reasonable . . . ." Motion to Dismiss, ¶ 16. Defendants' argument is belied by the Complaint.

Respecting the representations that were made by Defendants, Tarvisium has made specific and detailed allegations about the Defendants' representations:

> 21. By way of example, the financial statements supplied to Tarvisium represented, among other things, that EHW's trailing twelve months (TTM) net sales through June 30, 2018 were $13,750,129.82, or roughly $1,145,844 per month. Further, the financial statements that Dukat supplied to Tarvisium represented that EHW's gross margin was $5,472,006 for the same period, equivalent to 40% of net sales.
>
> 22. Similarly, Dukat, Mr. Kattan, and Mr. Schwartz represented that for the first six months of 2018, EHW's net sales were $7,296,656, or roughly $1,216,109 per month. And, EHW's gross margin for the same period was reportedly 41.5% of net sales.

Respecting the falsity of Defendants' misrepresentations, Tarvisium has specifically alleged:

> 25. On information and belief, these representations, which were in stark contrast to the post-closing financial performance of EHW (which was being managed and operated by Defendants both pre and post-closing) were false.
>
> 76. Since the closing, the financial results of the business have been abysmal. In October, the business had gross sales of only $302,882.30, or about 25% of the represented pre-closing monthly gross sales.
>
> 77. And, in November, the business had gross sales of $555,519.27, or about 46% of the represented monthly pre-closing sales.

10

78. The results were only slightly better for December, as EHW registered gross sales of $643,774.76; barely 53% of the monthly gross sales reported in the first half of 2018.

82. As further support for this allegation, Tarvisium has since learned that Dukat manipulated the EHW financials that were provided in due diligence. Specifically, the sale of EHW was always part of a business carve out, where Dukat sold its most valuable vertical to Tarvisium. Because it was a carve-out sale, Dukat separated the EHW financials from those of the other verticals. Tarvisium has since learned that these carve-out financials were manipulated in at least one essential sales channel—Amazon.com—for the first six months of 2018. On information and belief, Dukat inflated the Amazon.com revenue by $500,000 and understated the costs of goods sold for the same period by $200,000. Stated another way, Dukat misrepresented the EHW financials for the first six months of 2018 by a net $700,000. Applying a valuation multiple of four to this amount, the misrepresentation by Dukat effectively inflated the value of EHW by $2.8 million. The financials associated with other sales channels may have been manipulated as well. On information and belief, both Mr. Kattan and Mr. Schwartz were responsible for and participated in deciding which items of revenue and expense purportedly applied to EHW.

Respecting the reasonableness of Tarvisium's reliance, Tarvisium has specifically alleged:

24. These representations were material to Tarvisium's decision to enter into the agreements described in more detail below and were made by Dukat, Mr. Kattan, and Mr. Schwartz with the intent that they be relied upon by Tarvisium. In fact, Tarvisium did reasonably and justifiably rely upon them. These representations also enabled Dukat and Mr. Kattan to negotiate a sale price higher than what was originally agreed at the beginning of the negotiation: $5 million instead of the original agreed upon value of $4.5 million.

In short, Tarvisium has more than sufficiently pled its fraudulent inducement claim with particularity.

### *Defendants Kattan and Schwartz can be Held Directly Liable for their Misrepresentations*

Defendants Kattan and Schwartz also claim they cannot be held personally liable because even assuming they made fraudulent misrepresentations, they would have made them within the scope of their corporate authority. In support of this argument, they cite one case interpreting Iowa law that contains a general discussion of the doctrines of alter ego and veil-piercing. *See HOK Sport, Inc. v. F.C. Des Moines, L.C.*, 495 F.3d 927 (8th Cir. 2007)(interpreting Iowa law). Aside from the fact that the integrated contract has a Missouri choice of law provision, Iowa law

11

67800417.2
Case 4:19-cv-00086-DGK   Document 9   Filed 03/19/19   Page 11 of 16

therefore does not apply, and the facts of the *HOK* case are dissimilar to this one, Missouri law provides that an individual can be held *directly* liable for his or her misrepresentations even assuming that the individual's misrepresentations were made within the scope of his or her corporate authority.

It has long been held in Missouri that "*[a]n officer of a corporation cannot escape liability for fraudulent misrepresentation on the ground that he was acting for the corporation.*" *Bank of Atchison* County *v. Byers*, 41 S.W.325, 139 Mo. 627 (Supp. 1897)(emphasis added); *Ray County Sav. Bank v. Hutton*, 123 S.W. 47, 224 Mo. 42 (Supp. 1909). More recently, the Missouri Court of Appeals for the Western District has also held that direct claims lie against an employee for his or her misrepresentations regardless of whether the misrepresentations were made within the scope of the employee's employment:

> [T]o the extent that [the insurer] and [the claims adjuster] contend that the [claims adjuster] cannot be personally liable because he was acting solely as [the insurer's] *employee*, their contention is without merit.
> . . .
> The fact that [the claims adjuster] was acting as an agent for [the insurer] does not change the fact that [the claims adjuster] may have made misrepresentations to Grisamore and that [the claims adjuster] may be liable as a result.

*Grisamore v. State Farm Mut. Auto. Ins. Co.*, 306 S.W.3d 570, 576 (Mo. App. W.D. 2010)). And the Missouri Court of Appeals for the Western District made abundantly clear that its holding was premised on general Missouri tort law and not somehow on the nuisances of insurance law. *Id.* ("[C]laims for negligent and fraudulent misrepresentation do not presuppose that the tortfeasor is an insurer or even require involvement of insurance policies. The fact that Sisk was acting as an agent for State Farm does not change the fact that Sisk may have made misrepresentations to Grisamore and that Sisk may be liable as a result."). And, this Court agrees, including in at least two recently-decided cases. *See Plazaview, LLC v. The Travelers*

*Indemnity Col. and Shawn O'Roark*, 2015 WL 9875294, at *2 (W.D. Mo.); *see e.g., Kurz v. Progressive Cas. Ins. Co.*, 2012 WL 1424537, at *3 (W.D. Mo).

And, while not necessary under the preceding authorities, Tarvisium has pled facts to support that Defendant Kattan also had independent personal motivations for making misrepresentations that were separate and apart from the interests of Defendant Dukat:

> 4. Unbeknownst to Tarvisium until after the September 21 closing, Mr. Kattan urgently needed a large cash infusion to, among other things, . . . liquidate a substantial and aging inventory of high-end Italian shoes leftover from a business which had been his primary source of income for over thirty years (cash was quickly needed to start up a business to sell and advertise the discounted product—which he did shortly after closing). Accordingly, Mr. Kattan searched for a buyer of EHW to pocket as much cash as possible at closing ($1 million) for his short-term needs. To achieve this aim, on information and belief, Dukat, Mr. Kattan, and Mr. Schwartz misrepresented the financial health of EHW during negotiations of the deal, inflating both its historical sales and profitability.

In short, Defendants Kattan and Schwartz's assertions that Tarvisium has not stated a claim for fraudulent inducement is without merit.

### IV. Defendants' Argument that Tarvisium's Claim for Negligent Misrepresentation (Count V) Fails to State a Claim is Without Merit

Next, Defendants Kattan and Schwartz make the same argument for dismissal of Tarvisium's negligent misrepresentation claim as they do with respect to Tarvisium's fraudulent misrepresentation claim; that is, they claim they cannot be held personally liable for misrepresentations that they purportedly made in the scope of their authority. Defendant Schwartz even proffers from outside of the record an affidavit from his mother, Susan Schwartz, to the effect that at least as of October 25, 2018, Defendant Schwartz purportedly does not have an ownership interest in Defendant 36Lower. Aside from the fact that it is wholly improper to submit purported evidence from outside of the pleadings on a Rule 12(b)(6) motion, Defendant Schwartz's mother's affidavit does not aid him. Again, these defendants ignore that Missouri

13

67800417.2
Case 4:19-cv-00086-DGK   Document 9   Filed 03/19/19   Page 13 of 16

law permits a plaintiff to make a direct claim against an individual making a false representation even if that individual is purportedly acting within the scope of their authority with their employer. Defendants Kattan's and Schwartz's ownership interests are irrelevant.

## V. Defendants' Argument that Tarvisium's Claim for Tortious Interference (Count VI) Fails to State a Claim is Without Merit

Finally, Defendant Kattan argues that Tarvisium has failed to properly plead his claim for tortious interference with business expectancy. This argument is also completely without merit. As Defendant Kattan notes, the elements of this claims are:

(a) a contract or valid business expectancy;
(b) defendant's knowledge of the contract or relationship;
(c) intentional interference by the defendant inducing or cause of breach of contract or relationship;
(d) absence of justification; and
(e) damages resulting from defendant's conduct.

Motion to Dismiss, ¶ 39. As Defendant Kattan well-knows, Tarvisium has plead each and every one of these elements in its Complaint. *See* Complaint, ¶ 122-126. And, while Defendant Kattan asserts in his motion that he did not know that Tarvisium had a business expectancy with vendor, DoItBest, this position is patently ridiculous. DoItBest had been one of Essential Hardware's most important vendors long before the transactions at issue in this case. *See e.g.*, Complaint, ¶¶ 8c, 56, & 57. And, because Dukat was supposedly experienced in running the business as evidenced by the pre-closing financials that Defendants Kattan and Schwartz communicated to Tarvisium, Dukat agreed to operate and manage the business for a period of ninety (90) days after closing, including by "[c]onduct[ing] all daily required functions to ensure continuation *of existing . . . Vendor Management processes that were in place prior to the sale of the Business to the Customer*." *See* Complaint, ¶ 40 (citing SA, Exhbit A). In other words, after Tarvisium purchased the business, Dukat and its employees were to ensure that those same

14

67800417.2
Case 4:19-cv-00086-DGK   Document 9   Filed 03/19/19   Page 14 of 16

vendors, like critical vendor DoItBest, would continue to supply Essential Hardware as they had previously done. Thus, Defendant Kattan plainly knew that Tarvisium had a business expectancy with DoItBest.

Defendant Kattan also claims that when he interfered with DoItBest, he did not do so through improper means. However, Tarvisium has plainly alleged to the contrary:

> [O]n January 29, 2019, Mr. Kattan contacted the Territory Sales Manager of DoItBest, one of the most important suppliers to EHW, who supports the EHW account. During the conversation, Mr. Kattan requested that DoItBest reinstate Dukat's account to re-establish its business in the hardware sector. This request is, in and by itself, in direct violation of the Non-Compete Agreement entered by Dukat and Tarvisium as part of the sale. Moreover, during the same conversation, Mr. Kattan indicated that DoItBest should not continue doing business with Tarvisium because it was in no position to continue operating the business, without the support of Dukat.

*Id*., ¶ 72. Further, to the extent on reply Defendant Kattan attempts to yet again argue from outside of the record and claim that he was supposedly protecting his collateral, it must be pointed out that he had absolutely no right to any collateral under the note because Dukat was the first to materially breach the contract. And, Defendants themselves even recognize that the very earliest they would be entitled to a return of any collateral would be March 2, 2019, under their own theory of their defenses. Defendant Kattan was plainly breaching the noncompete provisions of the integrated contract and interfering with Tarvisium's business expectancy with DoItBest more than a month earlier on January 29, 2019. In short, Defendant Kattan's arguments that Tarvisium has not stated a claim for tortious interference is without merit.

## CONCLUSION

As discussed in more detail above, Tarvisium has more than adequately plead each of its causes of action. Defendants' motion to dismiss should therefore be denied in its entirety. Alternatively, should the Court determine that one or more of Tarvisium's claims is not

15

adequately pled, Tarvisium respectfully seeks leave of Court to file a First Amended Complaint with additional allegations.

Dated: March 19, 2019

Respectfully submitted,

**POLSINELLI PC**

By: */s/ Todd H. Bartels*
TODD H. BARTELS     MO #45677
ROBERT V. SPAKE, JR.     MO #66813
900 W. 48th Place, Suite 900
Kansas City, MO 64112
(816) 753-1000
tbartels@polsinelli.com
rspake@polsinelli.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was electronically filed on the 19th day of March 2019 with the United States District Court for the Western District of Missouri using the CM/ECF system which will send notification of such filing to all parties requesting electronic notice.

*/s/ Todd H. Bartels*
Attorney for Plaintiffs